IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| United States,<br><br>    Plaintiff,<br><br>v.<br><br>Anna Dmitrievna Curtis,<br><br>    Defendant. | **MEMORANDUM DECISION AND ORDER SETTING CONDITIONS OF RELEASE**<br><br>Case No. 2:20cr00043-RJS-CMR<br><br>Magistrate Judge Cecilia M. Romero |

  This court started the detention hearing on May 17, 2021, continuing it to May 24, 2021 (ECF 19, 25). The United States moved for detention of Defendant Anna Dmitrievna Curtis (Defendant) under 18 U.S.C. §3142 (f)(1)(E) as minor victims are involved and 18 U.S.C. § 3142 (f)(2)(A) and (B), arguing Defendant posed a serious risk of flight and attempted to obstruct justice and/or tamper and interfere with witnesses (ECF 16). In making its ruling, in addition to hearing oral argument, the court considered the United States' Motion Seeking Detention (ECF 16), Defendant's Opposition to United States' Motion Seeking Detention (Response) (ECF 17) as well as the parties' supplemental briefings (ECF 22, 23). For the reasons stated on the record, and as outlined below, the court finds there are sufficient conditions or combination of conditions that will assure Defendant's appearance and address risk of flight, reasonably address danger to the community and ensure that the Defendant will not obstruct justice and/or threaten or interfere with witnesses.

## DISCUSSION

  Under the Bail Reform Act of 1984, if a judicial officer finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and

the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." *See* 18 U.S.C. § 3142(e).  In making this determination, the court is guided by the factors set forth in 18 U.S.C. § 3142(g), including (1) "the nature and circumstances of the offense charged," (2) "the weight of the evidence against the person," (3) "the history and characteristics of the person" (including, among other things, "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings" as well as a consideration of whether the defendant was on probation, parole, or other form of supervision at the time of the alleged instant offense), and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."  The government must prove any risk of flight by a preponderance of the evidence and danger to the community by clear and convincing evidence.  *United States v. Cisneros*, 328 F.3d 610, 617 (10th Cir. 2003).  The court notes United States' focus under section 3142(f)(1)(E) was limited to risk of flight.

    a. **Nature and Circumstances of the Charged Offenses**

The Bail Reform Act requires this court to consider "the nature and circumstances of the offense, including whether the offense is a crime of violence, a violation of 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device."  18 U.S.C. §3142(g)(1).  The charges in this case are international parental kidnapping (ECF 5).  This crime involves two minor victims, but no presumption of detention applies.  As discussed in detail at the hearing, the court is not able to find the nature and circumstances of the charged offenses weigh in favor of detention.  Prior to going to Russia, the Defendant sought and obtained permission of her ex-husband, the two minor children's father

(hereinafter referred to as Father) to take the now 15- and 17-year-old children to Russia in June "through the end of summer" of 2019 to travel in Europe, Thailand, and Russia at the Defendant's discretion (ECF 16 at 7 and 23 at 4).

The United States focused its argument on the contention that the Defendant left the United States knowing the minor children's Russian passports had expired, which is significant because the United States requires U.S. and Russian dual nationals (which applies to the two minor children) to enter and exit on a Russian passport (ECF 16 at 7). While that appears to be true, evidence submitted in Defendant's Supplemental Motion for Release (ECF 23) shows Father was also aware that the children's passports were expired but did not prohibit the children from leaving the United States. Moreover, the Defendant proffered that she asked Father for assistance with getting the passports complete prior to leaving and that Father declined to help stating, "Regarding the Russian passports—that has nothing to do with me—that is about your summer travel plans, not mine" (ECF 23 at 3). While the Defendant did enter Russia without valid passports for the children, she proffered she thought she would be to apply for and obtain new passports more efficiently in Russia, which she was ultimately able to do, although it did take a substantial period of almost six months to obtain valid passports as she did not have possession until December (they were issued in October/November but Defendant alleges she did not know until December) (ECF 23 at 13).

Furthermore, while in Russia, in approximately November to December 2019, Father and Defendant had discussions about which child could/would reside with her and which she would return home (ECF 23 at 108). Father gave permission for the son to remain to finish school (ECF 23 at 108 and 22-1 at 3). These discussions also included conversations about an increase and/or change in support for the son that was to remain with Defendant, based on the agreement

of the Father that the son would remain in the custody of Defendant in Russia. The United States has characterized the communications regarding an increase in support as Defendant holding the children "for ransom, and attempt[ing] to extort a large amount of money from the minor's victim's father" (ECF 16 at 5). In reviewing the email communication between Defendant and Father, the court is unable to find that characterization is supported. The Father gave permission for the son to remain with Defendant and then a discussion was taking place about the financial impact of that decision *while* the Defendant was also working to secure the passport documentation to return the children to the U.S. The United States also offered argument that Defendant was attempting to flee back to Russia with knowledge of either the state warrant that was issued in January 2020 and/or the present Indictment after a vacation with the two children in the Maldives on January 13, 2020 (ECF 22-1 at 4), but the court is not able to sort out that issue as the Defendant presents an equally plausible timeline as to the vacation, change in plans, and return flights to Russia to meet her mother who was traveling to Russia. On whole, the court is not able to find that the nature and circumstances weigh in favor of the United States.

    b.  **Weight of Evidence Against Defendant**

The court is unable to find this factor weights in the United States' favor. In her Response, Defendant submitted various emails and other correspondence from Father with express permission to take the children to Russia and for the children to remain in Russia for an extended period (ECF 17). As discussed above, in late November/early December of 2019, Father and Defendant were still discussing if the older child, the son, could remain in Russia and how/if each parent's support obligations would change. Father agreed that the son could stay for the school year (ECF 22-1). In addition, Defendant was working to secure the two children's passport information, was in contact with Father and provided updates on the status of the

passport documentation, which she did not obtain until late December.  This evidence negates the weight of the evidence against the Defendant and bolsters Defendant's affirmative defenses. *See, e.g., United States v. Mobley*, 720 Fed. App'x 441, 444 (10th Cir Dec. 19, 2017) (unpublished) (explaining the district court erred in failing to consider defendant's affirmative defenses to international kidnapping as part of consideration of the 3142g factors).  Given the above, the affirmative defenses that are persuasive to the court are set out in 18 U.S.C. § 1204(c)(3) that "the defendant had physical custody of the child pursuant to a court order granting legal custody or visitation rights and failed to return the child due to circumstances beyond the defendant's control, and the defendant notified or made reasonable attempts to notify the other parent or lawful custodial guardian within 24 hours after the visitation expired and returned the child as soon as possible."

    **c.  History, Characteristics, and Financial Resources/Serious Risk of Flight**

The Defendant has no criminal history.  She is a citizen of Russia and became a naturalized United States Citizen around 2007.  She was married to Father in 2000, and the couple divorced around 2008.  She obtained formal education in the United States and in 1996 she graduated with a degree in economics from BYU.  The Defendant's mother resides in the Utah area as do the two children who are now with Father.  The Defendant herself also resided in Utah for approximately 18 years until she relocated to Florida in 2011.  She also has longtime ties to the United States.

Of concern to the United States was Defendant's lack of ties to Utah and financial resources.  The United States in making its argument overlooks the Defendant's longtime ties to the United States.  While the Defendant does not currently reside in Utah, she lives in Florida and prior to 2011 she resided in Utah, and her mother is located here.  The United States argued

that because Defendant has access to significant financial resources, ties to a foreign country, and dual citizenship with the Republic of Russia, she poses a serious flight risk. Specifically, the United States argued that Defendant has not spent any significant amount of time in Utah since she moved to Florida and then later back to Russia and has wealth to support a lavish international lifestyle. While the court agrees it would be a mistake to discount these concerns of the United States, the court finds conditions can be put in place to reasonably manage risk of flight or non-appearance. As discussed above, the Defendant does have ties to Utah and the U.S., but important to the court is the compliance of Defendant while in France awaiting extradition. The Defendant spent 17 months in France awaiting extradition and complied with the conditions of release (ECF 23 at 7). Given the compliance for the significant period of time while in France, the court is unable to find she present a serious risk of flight under 18 U.S.C. § 3142 (f)(2)(A).

The court does note Defendant's dual-citizenship and the absence of an extradition treaty between the U.S. and Russia is troubling and of great concern to the court. However, given Defendant's cooperation and behavior while on release in France pending extradition, the court finds any risk of flight is manageable through GPS monitoring and Defendant surrendering any and all passports to the court. Furthermore, Defense counsel has agreed to be the point of contact between Defendant and the Russian Consulate, and Defendant has agreed not to contact the Russian Embassy or Consulate otherwise while on release. The Pretrial Services Report indicates Defendant has no history of mental health treatment, substance abuse, or criminal charges (ECF 24). These additional facts regarding Defendant's history and connection to Utah and the United States weigh in favor of release.

    d.    **Attempts to obstruct justice and/or tamper and interfere with witnesses.**

6

The United States has also argued for detention under 18 U.S.C. § 3142(f)(2)(B). Under this provision, a defendant may be detained pending trial if the government establishes "a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror." *Id*. This is a forward-looking inquiry, requiring a showing of a serious risk the defendant will obstruct justice in the future. Although the standard of proof under this section is not well-developed, some courts have determined that where the government seeks detention under this section, it must sustain its burden of proof by "clear and convincing evidence." *See United States v. Dodge*, 846 F. Supp. 181, 185 (D. Conn. 1994) (citing *United States v. Rodriguez*, 950 F.2d 85, 88–89 (2d Cir. 1991) ("To obtain detention on this ground the government must sustain its burden of proof by clear and convincing evidence."); *see also United States v. Jones*, No. 99-1682, 1999 WL 668516, *3 (1st Cir. Aug. 9, 1999) (unpublished) (concluding that there was clear and convincing evidence of a serious risk that defendant would attempt to obstruct justice).

Obstruction of justice contemplates interference in the administration of justice. For instance, a common federal criminal statute prohibiting obstruction of justice requires proof that a person endeavored to influence a juror or officer of the court in the discharge of her duties through threats or force—or endeavored to influence the due administration of justice. 18 U.S.C. § 1503. Although the United States need not make any statutory showing of obstruction, this overall concept of obstruction is instructive.

The United States' proffer simply fails to establish a *serious* risk Defendant will obstruct justice or attempt to obstruct justice in the future. The United States argues that Defendant's flagrant disregard for state court child custody orders warrants her detention

and that she has attempted to influence or intimidate the minor victims. However, Defendant did appear for the noticed Utah state court proceeding via internet video conference, made regular check-ins with the French authorities pending extradition, and voluntarily surrendered to the U.S. Marshals for transport to Utah for these proceedings. In addition, the current custody order only allows for supervised telephone conversations with the minor children. This negates any serious risk that Defendant will attempt to interfere with witnesses in this case through threats and/or intimidation or otherwise obstruct justice. The United States' allegations are insufficient to meet its burden of establishing § 3142(f)(2)(B) applies in this case, even by a preponderance of the evidence, let alone by clear and convincing evidence. The court therefore declines to detain Ms. Curtis pursuant to § 3142(f)(2)(B).

## CONCLUSION

The United States failed to show by a preponderance of the evidence that the court cannot reasonably assure the appearance of Defendant in further criminal proceedings by imposing a combination of conditions. Once a place of residence has been located and approved by the court and vetted by pre-trial services, Defendant will be confined to home detention. In addition to the standard conditions of release and additional conditions imposed in the separate Order Setting Conditions of Release which the court will issue upon review of the residence, Defendant is ordered to refrain from any direct contact with the Russian Embassy. Defendant is ordered to wear a GPS location monitoring device with exclusion zones of the children's residence, schools, and the Russian Embassy, and comply with all reporting requirements with her pretrial officer including finding and maintaining verifiable employment. Defendant will surrender all her passports. The court further admonishes Defendant to comply and respect the court's pretrial

officer and abide by all pretrial instructions.  Failure to do so may result in revocation of release.

At the hearing, the United States also asked the court to stay its Order pending appeal. The court invited the United States to file a formal motion for stay which the court will review upon receipt.

DATED this 25 May 2021.

_____
Magistrate Judge Cecilia M. Romero
United States District Court for the District of Utah